Denio, J.
 

 (Dissenting.) I am of opinion that this judgment cannot be sustained, either upon general principles or according to the provisions of the act. The theory of mutual insurance is, that-the individuals who associate, and those who from
 
 *143
 
 time to time join them, enter into an arrangement by which each member is insured to the amount specified in his policy, upon the property referred to in it, and becomes at the same time an insurer of each of the other associates, by binding himself to epntribnte.towards making good any losses which they may sustain, in proportion to the amount of his own insurance. The relations which the members sustain towards each other is a reciprocal one, and it is that feature which creates the mutuality which distinguishes this arrangement from other contracts of insurance. It follows, that if for any cause one of the persons so associating 'ceases to be an insured party, he from that time ceases to be a party to the mutual arrangement. • When he has no longer any property to be protected by the contributions of the other members, -the consideration upon which he agreed to contribute for their protection is wanting; the relations upon which the parties associated have ceased to exist, and hence the obligations incurred become inapplicable and inoperative; the vital principle of the arrangement is gone, and can only be revived by a new insurance, by which he shall be again made a party to the association. It is not material whether he has ceased to be an insured party on account of having disposed of the property in respect to which he was insured, or because the property has been destroyed, so, that the pro visions.of the contract of indemnity cannot attach to it. And in case of the destruction of the property, it is of no moment whether the loss was occasioned by the happening of the peril insured against, or "by any other cause. If the property is in any way annihilated, so as not to be any longer the subject of an insurance, the contract which provided an indemnity to the owner against its destruction has ceased to have any element to support it, and can no longer exist. This precise point has been determined by the Supreme Court of Pennsylvania. In
 
 Wilson
 
 v.
 
 The Trumbull Mutual Insurance Company
 
 (7 Harris, 372), that court held that the interest in the property insured was an essential link in the relation of mutual insurance, and therefore, that when a member of a mutual insurance company, whose stock of goods was insured, sold them
 
 *144
 
 several months before a loss by fire happened, he was. not liable for a portion of the loss, though it happened during the time for which he was insured. The court was of opinion that when the defendant sold his property he ceased to be a member of the company, and that the assessment could only be upon those who were members at the time the loss happened. “ If,” the court said, “ a member perform all his duties, and pay a share of all losses occurring during his membership, no more can justly be required of him.” His premium note, they added, cannot be used to enforce contributions for losses occurring after he ceased to be insurer or insured. A contrary view would lead to results entirely inconsistent with any notion of mutual insurance. Upon the plaintiff’s argument, the defendant continued liable on his note for all losses which might happen before the expiration of the time for which he was originally insured. The period would extend more than four years from the time when, by the destruction of his buildings and the payment of his loss, he had ceased to have any interest in the company as an assured party. Thenceforward his only connection with it would be that of a guarantor of its contracts. He would be liable not only on its engagements made while he was an assured party, for which-there would be a show of reason, but to all such as it might make after he had ceased to be insured. As to such cases, he would be a guarantor of parties with whom he was in no kind of privity, and against whom he could not in any possible event have any resort for any purpose. In the opinion of the Supreme Court, it is suggested that the premium notes are the capital stock of the companies, and that the makers have not in general any more right to withdraw them than the shareholders in a stock company have to withdraw the moneys they have invested in the stock. This argument, I think, proceeds upon an erroneous view of the nature of these associations. They have not, in fact or in theory, any capital Stock. Although the engagements which the members enter into are in the form of notes, they are in substance and effect' only guaranties that the makers will contribute ,to the losses of
 
 *145
 
 the other associates, and the expenses of the business, in certain proportions. If no losses happen, nothing can be collected on the notes except a portion of the expenses, and if the expenses are met by the amounts required to be paid down, nothing whatever can be collected. Tkeynre continuing guaranties, that is, they continue to operate against the makers as long as those makers continue to hold such relations to the other associates as will enable them to resort, in the event of a loss, to the reciprocal guaranties given by the others. It is further suggested, in the opinion of the Supreme Court, that the amount of the note of a person taking out a policy is proportioned to the time it has to run; the risk assumed being, it is said, proportional to the time it is to continue; and hence it is argued that it would be inequitable that the note should be retired before the whole time the insurance was to run has expired, whatever may become of the property. This argument, I think, supposes that the artificial person, the corporation, represents interests other than those of the policy holders; but there is no such interest in a mutual company. The bargain which each member makes is with the other members, and not with any other party supposed to be represented by the corporate name. It cannot be correct to apportion the amount of the premium note according to the length of time covered by the insurance. Assessments for losses are always to be in proportion to the amount of the premium note. How, suppose A is insured for $1,000 for five years, and B for an equal sum for one year. If B give a note for $100, A must give one for $500. If during the year a loss happen to another insured party, A must of course pay five times as much as B. If B take out a policy on his property each year, and give only the note for $100 on each occasion, which is all that could be required of him, through the five years covered by A’s policy, the latter will have to contribute in the same proportion for all the losses during that time. This, of course, would be a very unequal arrangement, and would render it very hazardous to insure for a long period. Hor would it be quite equitable in certain contingencies to have the notes upon policies for long
 
 *146
 
 and short periods of the same amount; for if "we again take the case of insurance from year to year for five years, and a single policy for the same length of time, and a note of equal amount given by each, if lossgs should occur in each year during the five years, the party holding the long policy might pay up (¡his note before his policy expired, while the one giving a fresh note each year might still continue liable though the other would be wholly exempt. The only way in which equality in this respect can be worked out under this system, would be to have all the policies made to run for the same period, and to have the premium notes always proportional to the amount insured and to the nature of the risk.
 

 If
 
 we take up the charter of this company, we shall see the principles, which have been stated, very plainly laid down. In the first place, it is declared that all persons who shall insure with the corporation, and their representatives and assigns continuing to be insured, “ shall thereby become members thereof during the time they shall remain insured,
 
 and no longer.”
 
 (Act, § 2.) Then all the other provisions prescribing the relations between the parties and the corporation and their respective rights and liabilities, refer to them as members. Thus: This company is to be managed by thirteen members, who are to constitute a board of directors (§ 3). The directors are to be chosen by the members (§ 4). The mode of becoming a member is by taking out a policy of insurance, and there is no other way of acquiring the position of a member (§ 6). Every member shall be bound to pay for losses and necessary expenses, in proportion to the amount of his deposit note (§ 8). Suits may be maintained by the corporation against the members for their notes, and by the members against the corporation for losses by fire (§ 9). Assessments fbr losses are to be made against the members (§ 10). And after the notes are exhausted, the members may be further assessed to the amount of óne per cent on their notes. It would seem that the Legislature were very careful to determine in the outset that none should be members who were not at the same time insured persons; and haying in that manner given a precise idea of the nature
 
 *147
 
 of membership, they so arranged all the other provisions as to affect the member’s and no other parties. Unless it canbe said that a person who has insured his property in this company, and, after its total destruction by fire, has received his insurance money, still remains insured by the company on the very same property, it is impossible to hold that the defendant was a member at the time the loss occurred with which he is sought to be charged; and if not a member at that time, it is equally impossible to hold him to be a contributor towards that loss.
 

 The provisions of the 7th section, which allow members to receive back their deposit notes upon aliening the property insured, and surrendering the policy, is a further evidence that the nature of the system, is such as I have supposed. If the notes were in the nature of capital, as the Supreme Court has suggested, every member would be interested in it, and it would be unjust that it should be withdrawn when the maker should choose to dispose of the property. But this privilege of withdrawing a note, under such circumstances, is quite consistent with the idea that it is a guaranty, to continue so long as the maker shall be in a situation which will enable him, in the event of a loss by fire, to be benefited by the other similar guaranties.
 

 Again, by the provisions.of section 8, a lien in the nature of a mortgage is created against any building insured and the interest of the assured in the land on which it stands, for the amount of the deposit note, to take effect when the company shall cause the policy to be entered in the book of mortgages. If the plaintiff is right in his position, a lien might be established against the lot on which the defendant’s saw mill was erected, by making an entry of the policy in the clerk’s office long after it had become
 
 functus
 
 officio, by the performance of every stipulation contained in it. It is said in the provision, it is true, that the lien shall continue during the policy. This does not, I think, mean during the time mentioned in the policy as the duration of the insurance, but during the existence of the policy as an operative instrument.
 

 
 *148
 
 My opinion is, that the judgment of the Supreme Court was erroneous, and that it ought to be reversed.
 

 Judgment affirmed.